**United States District Court**
**District of Massachusetts**

```
                               )
United States of America,      )
                               )
          v.                   )
                               )       Criminal Action No.
Paul M. Nova,                  )       19-10347-NMG
                               )
          Defendant.           )
                               )
```

**MEMORANDUM & ORDER**

**GORTON, J.**

Defendant Paul Nova ("Nova") has been indicted on several offenses related to the illegal possession of narcotics and firearms, including Distribution of and Possession with Intent to Distribute 40 Grams or More of Fentanyl and 500 Grams or More of Cocaine in violation of several subsections of 21 U.S.C. § 841. The indictment also includes drug and firearm forfeiture allegations. Currently pending before the Court are defendant's motions to dismiss the indictment on Double Jeopardy and Due Process grounds and two motions to suppress evidence. For the following reasons, those motions will be denied.

### I.  Background

This case arises from a narcotics investigation conducted primarily by the Massachusetts States Police ("MSP") with assistance from federal law enforcement. Law enforcement opened an investigation after a confidential informant apprised

-1-

officers about a suspected heroin/fentanyl dealer, later identified as the defendant Nova.  Investigators subsequently obtained warrants for location information tied to a phone and vehicles used by the defendant.

After further investigation, including numerous controlled buys of narcotics, investigators obtained search warrants for a potential "stash house", the defendant's temporary residence and a vehicle driven by the defendant.  Nova has moved to suppress evidence gathered from four warrants: (1) for phone location information; (2) to install a GPS tracking device on his Jeep Cherokee; (3) to install a GPS tracking device on his Ford Edge; and (4) to search premises in Brockton and Weymouth and the Ford Edge.

The Court outlines the facts relevant to each warrant as described in the affidavits attached to defendant's motion and the accompanying briefs of both parties.

**A. Phone Location Warrant**

In May, 2017, based on information from a confidential informant ("CI-1"), law enforcement began an investigation into heroin/fentanyl dealing by an individual known as "Meagan" (later identified to be the defendant Nova).[1]  According to the

---

[1] The various affidavits signed by law enforcement (submitted with the defendant's brief) and the government's brief refer to the alias of defendant interchangeably as "Megan", "Magan" and "Meagan".  The Court adopts the spelling "Meagan".

informant, the defendant would use the phone number (774) 810-5454 ("the target phone") to call him and arrange drug transactions.

On May 9, 2017, law enforcement used CI-1 to conduct a controlled purchase of drugs from the defendant.  CI-1 called the target phone and arranged the transaction.  CI-1 completed the deal and law enforcement observed the defendant drive away in a Jeep Cherokee.  Officers attempted to ascertain the owner of the Jeep and subscriber information for the target phone but were unsuccessful because the Jeep had been rented by a third-party and the phone was of the prepaid variety with no subscriber information.

Investigators determined that location information from the target telephone was needed to identify the defendant. On May 16, 2017, Trooper Michael Pederson of the MSP signed an affidavit ("Pederson Affidavit") in support of an application for a warrant to obtain phone location data for the target phone.  The Pederson Affidavit detailed law enforcement's ongoing investigation into the defendant including the controlled drug buy and information provided by CI-1.  A Justice of the Massachusetts Superior Court for Plymouth County subsequently issued a warrant authorizing 15 days of electronic surveillance.

### B. Warrant to Install GPS Tracking Device on Jeep Grand Cherokee

On May 26, 2017, MSP Trooper Shaun Bellao ("Trooper Bellao") signed an affidavit ("the Jeep Affidavit") in support of an application for a warrant to install a GPS tracking device on the Jeep Cherokee driven by Nova.  The warrant recounted the information described in the Pederson Affidavit and included new information, including Nova's identity which was now known to investigators.  Law enforcement also used CI-1 to conduct a second controlled drug purchase wherein they observed Nova drive the Jeep to complete the pre-arranged drug deal with CI-1.  The Jeep Affidavit stated that GPS location information would assist in conducting surveillance and help to identify defendant's residence and the drug supplier.  A search warrant was issued, and a GPS device was installed on the Jeep on May 27, 2017.

### C. Warrant to Install GPS Tracking Device on Ford Edge

On June 9, 2017, Trooper Bellao signed an affidavit for a warrant to install a GPS device on a Ford Edge driven by Nova. After investigators learned that the Jeep Cherokee had been returned and the same individual had rented a Ford Edge, law enforcement used CI-1 to conduct another controlled purchase from the defendant.  He was surveilled to the arranged meeting location driving a Ford Edge.  A search warrant was issued, and a GPS device was installed on the Ford.

**D. Search Warrants for Premises in Brockton, Weymouth and Ford Edge**

On June 19, 2017, Trooper Bellao signed an affidavit ("the Premises Affidavit") in support of an application for search warrants for (1) Nova's temporary residence, an apartment in Weymouth, (2) a suspected stash house in Brockton and (3) the Ford Edge driven by Nova.

The Premises Affidavit described (1) the investigation, (2) the location of Nova's residence and the suspected stash house and (3) the analysis supporting Trooper Bellao's belief that evidence of heroin distribution would be found at the subject premises.  It also recounted two additional controlled buys by CI-1 during which Nova drove the Ford Edge.

**II.  Motions to Suppress**

**A. Legal Standard**

Evidence obtained through a search and seizure conducted without probable cause is subject to suppression under the Fourth Amendment exclusionary rule. E.g., United States v. Calandra, 414 U.S. 338, 354 (1974).  As articulated by the First Circuit Court of Appeals:

> A warrant application must demonstrate probable cause to believe that (1) a crime has been committed—the commission element, and (2) enumerated evidence of the offense will be found at the place searched—the so-called nexus element.

United States v. Dixon, 787 F.3d 55, 59 (1st Cir. 2015)(quotation omitted).

–5–

Probable cause exists when there is a "fair probability that contraband or evidence of a crime will be found at a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983). Courts assess probable cause "on the basis of the totality of the circumstances." United States v. Flores, 888 F.3d 537, 543 (1st Cir. 2018).

A prior judicial determination of probable cause is entitled to great deference by the reviewing court. Gates, 462 U.S. at 288; See also United States v. Bregu, 948 F.3d 408, 414 (1st Cir. 2020)(noting that "when the motion to suppress is based on an allegedly deficient warrant, we give significant deference to the magistrate judge's initial probable cause determination, reversing only if there is no substantial basis for concluding that probable cause existed")(internal quotations omitted).

**B. Application**

Nova argues that the warrants for electronic surveillance and the subject premises were issued in violation of the Fourth Amendment because the affidavits filed with the application failed to establish a nexus between the alleged drug activity and the target phone, the Jeep Cherokee, the Ford Edge or the search locations.

**1. Target Phone Warrant**

The Pederson Affidavit included information provided by CI-1 and about the use of the target phone to arrange a controlled drug buy.  CI-1 informed officers that an individual, "Meagan" was a heroin dealer who he had called on the target phone to buy drugs.  Subsequently, under the direction of law enforcement officers, CI-1 made a monitored phone call to the target phone and arranged a controlled drug deal with "Meagan".  As the government notes, investigators sought the warrant not to intercept defendant's communications but to determine his location.  Those facts provided the issuing magistrate with sufficient basis to find probable cause that phone location information would provide law enforcement with evidence of criminal activity, specifically narcotics distribution.

**2. GPS Location Warrants for Vehicles**

The affidavits provided in support of the applications for GPS warrants on the Jeep Grand Cherokee and the Ford Edge also provided the issuing magistrate with sufficient basis to find probable cause that the location of those vehicles would provide evidence as to the defendant's illicit heroin/fentanyl distribution.  Both affidavits stated that (1) CI-1 informed law enforcement that Nova used rental vehicles to conduct drug transactions and (2) during the controlled buys conducted during

the investigation, Nova arrived in a rental vehicle, first the
Jeep and later the Ford.  In each affidavit, the affiant stated
that location information would assist law enforcement in
identifying Nova's residence, a potential stash house and his
narcotics supplier.  Location information for the vehicles
rented by defendant was pertinent to the investigation and there
was a basis for the magistrate's finding of probable cause.

**3. Warrants for Premises in Brockton, Weymouth and Ford Edge**

The affidavit in support of the warrant to search premises
in Brockton and Weymouth and the Ford Edge was also supported by
probable cause.

At the time investigators sought a warrant for the subject
premises and vehicle, they had conducted six controlled drug
buys from Nova and gathered location information from the target
phone and his two rental cars.  Investigators used that GPS
location data, as well surveillance, to deduce that Nova (1)
lived (or was temporarily residing) at the Weymouth apartment
and (2) was using the Brockton apartment as a potential stash
house.  GPS information revealed that Nova would leave his
residence, travel to the Brockton apartment and then immediately
conduct what investigators believed to be a series of drug
transactions.  That pattern suggested to investigators that the
Brockton apartment was a stash house.  The investigators also
relied on information supplied by CI-1, visual surveillance and

-8-

further controlled drug buys in support of their conclusions and the affidavit provided to the magistrate.

As the government points out, "probable cause does not require either certainty or an unusually high degree of assurance." United States v. Clark, 685 F.3d 72, 76 (1st Cir. 2012). Given the totality of the circumstances, the affidavit presented to the magistrate supported probable cause that evidence of illicit narcotics dealing would be found to be present at the subject premises and vehicle specified in the search warrant.

### 4. Good Faith Exception

Finally, the government correctly maintains that, even assuming arguendo that one of the affidavits failed to establish probable cause, the evidence seized would be admissible under the "good faith" exception to the exclusionary rule. See United States v. Leon 468 U.S. 897 (1984). As the government notes, the defendant does not allege that the officers acted recklessly or in bad faith in drafting their affidavits. Nor does the defendant claim that the magistrates were derelict in performing their duties or that the warrants were facially invalid. In this case, the officers acted in objectively reasonable reliance on a warrant issued by a detached and neutral magistrate and therefore, even if the affidavits were found to lack probable

cause, (which they do not) the evidence would not be suppressed. Id. at 913.

### III. **Motion to Dismiss on Double Jeopardy Grounds**

Nova also moves to dismiss the indictment on double jeopardy grounds.  The Double Jeopardy Clause of the Fifth Amendment states that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb."  The defendant has not, however, been twice put in jeopardy for the same offense.  Nova was indicted in Plymouth County Superior Court on September 6, 2019.  On September 18, 2019, a federal grand jury returned an indictment for the same offense conduct. His state case was dismissed on September 20, 2019, after the Commonwealth of Massachusetts entered a Nolle Prosequi.  Because a jury was never empaneled and sworn, jeopardy never attached in his state case and thus the instant federal prosecution does not constitute a successive prosecution under the Double Jeopardy Clause.  See Martinez v. Illinois, 572 U.S. 833, 839 (2014) ("There are few if any rules of criminal procedure clearer than the rule that jeopardy attaches when the jury is empaneled and sworn.")(internal citation and quotation omitted).

**ORDER**

For the foregoing reasons, the motion of defendant to dismiss the indictment on double jeopardy grounds (Docket No. 28) and his motions to suppress (Docket Nos. 29 & 31) are **DENIED.**

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated August 7, 2020